322

ESTATE OF DAVIS: AMERICAN SURETY COMPANY OF NEW YORK and another, Appellants, vs. SWENBY, Trustee, and another, Respondents.

*March 4—June 4, 1935.*

For the appellant American Surety Company of New York there were briefs by *Frawley & Stolts,* attorneys, and *W. H. Frawley, Jr.,* of counsel, all of Eau Claire, and oral argument by *W. H. Frawley* and *W. H. Frawley, Jr.*

For the appellant Sperbeck there was a brief by *W. T. Doar* and *James E. Hughes,* both of New Richmond, and oral argument by *Mr. Doar.*

*Spencer Haven* of Hudson, for the respondents.

The following opinion was filed April 2, 1935:

FOWLER, J.   C. H. Sperbeck was appointed executor of the will of Nelson Davis and qualified as such.   The testator left $5,000 in trust for the benefit of Elsie Fleming, the interest to be paid annually to her and the principal in 1940. The executor inventoried as assets of the estate seven certificates of deposit, all on the Bank of New Richmond, aggregating without interest $18,450.   This inventory was made out by the executor April 2, 1932.   On December 13, 1932, Sperbeck filed his final account as executor in which he listed as cash on hand for distribution $7,328.21.   The court adjudged that the final account be allowed as filed, and that the executor pay over $5,000 to the trustee of Elsie Fleming to be held for her in accordance with the terms of the will.

When the executor filed his account, he did not in fact have $7,328.21 in actual cash for distribution.   The amount was made up of a $5,000 certificate of deposit and a checking account in the Bank of New Richmond, of which Sperbeck was cashier.   The bank closed temporarily on March 3, 1933, by the governor's bank holiday proclamation.   Stabilization proceedings were instituted and the bank shortly thereafter opened, first paying ten per cent of the deposits in the bank when it closed, and thereafter paying forty per cent, so that payment of fifty per cent of those deposits, which included the certificate Sperbeck held at the filing of his account, is still withheld by the bank.

Hearing on the final account was had on January 3, 1933. At this time and when the final account was filed and up to March 3, 1933, the certificate of deposit was cashable and the full equivalent of cash. The court deferred the signing of the order allowing the account and directing distribution until a trustee of the Elsie Fleming fund should qualify by filing a bond. This order was not signed until July 25, 1933. At this time the certificate was not cashable and was not the equivalent of cash. The order, however, treated it as cash as it was treated in the account, and directed payment of $5,000 in cash to the trustee of the Elsie Fleming fund. The executor at the time held a certificate of deposit issued by the bank to him as trustee of the fund. He indorsed this certificate to Swenby, who on July 28, 1933, was appointed and qualified as trustee. Swenby presented the certificate to the bank for payment and the bank refused to pay it. He then tendered it back to Sperbeck, who refused to accept it back and pay the money required by the order of the court.

To avoid the liability fixed upon him by the order settling his account and directing payment of $5,000 to the trustee, Sperbeck and his bondsman, as executor, in June, 1934, moved the court to permit the executor to amend his final account by substituting the $5,000 certificate of deposit on hand in lieu of $5,000 of the cash stated as on hand for distribution, and to amend the final order by substituting a direction to turn over to the trustee the certificate of deposit for $5,000 instead of $5,000. The ground of the motion is that the account was made out as filed and the order was entered in form as signed by mistake. The motion aims to correct the order on the theory that the insertion of the cash item in the account, and the provision of the order for turning over $5,000 were made under mistake of fact, and the record should be amended "to conform to the truth" under sec. 324.21, Stats.

But although, when the executor filed his account, he did not have in his manual possession $5,000 in money, he did have in his hands what was its full equivalent, and what he chose to consider and represent as $5,000 in cash, and which was then convertible into cash and which remained so convertible at his option for two months after the final account came up for hearing. Thus, there was no mistake of fact involved in the making or filing of the final account.

From this point on, whether the executor should be relieved from paying cash was considered and tried as depending on whether the executor acted with due care and diligence in closing the estate. Instead of converting the certificate into cash and holding it as such in a safety-deposit box or otherwise, or segregating it from the funds on deposit in the bank as he might have done, the executor elected to leave it in the bank of which he was cashier, knowing the condition of the bank which resulted in the adoption of the stabilization plan, and the tying up of the fund so that it was not available to the trustee. The delay in closing the estate from January 3d until after the closing of the bank by the bank holiday and the stabilization proceedings was considered by the court as the fault of the executor. Instead of promptly securing the appointment and qualification of a trustee of the trust fund, he acted on the assumption that he was the trustee and converted the original certificate into one payable to himself as trustee. In this situation the county court held that the executor should be held responsible for the result of not having cash to turn over to the trustee, rather than that the consequences should fall upon the beneficiary of the trust, and declined to relieve him from the provision of the final order requiring him to turn over $5,000 in money to the trustee. The view and ruling of the court was that, under the existing facts, the order in form as made was correct, although $5,000 of the amount treated as cash was represented

by a certificate reciting a deposit of that amount in a bank. We cannot say that this view and holding of the county court was erroneous.

The county judge authorized the bringing of suit on the executor's bond prior to the hearing on the motion to amend the order directing payment of $5,000 by the executor to the trustee. This suit had been commenced prior to the hearing of the motion. Upon the court announcing his decision of the motion, the appellants moved the county court for a stay of the proceedings of the case in circuit court pending this appeal. This motion was denied on the ground that the court had no jurisdiction to control the proceedings in the circuit court. The appellants appeal from this order and contend that the county court had control over the conduct of the trustee of the Fleming fund and might properly direct him not to press the circuit court suit to judgment until determination of the appeal from its ruling on the motion to amend. In view of the affirmance of the order made upon the motion to amend, whether the county court properly decided the motion for a stay is moot, and there is neither need nor occasion to consider it.

*By the Court.*—The order of the county court denying the motion to amend its final order in the Nelson Davis estate is affirmed.

A motion for a rehearing was denied, without costs, on June 4, 1935.